**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| ADAM FRANCHI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PINNACLE ENTERTAINMENT, INC., ANTHONY M. SANFILIPPO, CARLOS RUISANCHEZ, CHARLES L. ATWOOD, STEPHEN COMER, RON HUBERMAN, JAMES L. MARTINEAU, JAYNIE MILLER STUDENMUND, and DESIRÉE ROGERS,<br><br>Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on December 18, 2017 (the "Proposed Transaction"), pursuant to which Pinnacle Entertainment, Inc. ("Pinnacle" or the "Company") will be acquired by Penn National Gaming, Inc. ("Penn National") and its wholly-owned subsidiary, Franchise Merger Sub, Inc. ("Merger Sub").

2. On December 17, 2017, Pinnacle's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Penn National and Merger Sub. Pursuant to the terms of the Merger Agreement, if the Proposed Transaction is completed, shareholders of Pinnacle will receive $20.00 in cash and 0.42 shares of Penn National common stock for each share of

Pinnacle common stock they own (plus, if the Proposed Transaction is not consummated on or prior to October 31, 2018, an additional $0.01 for each day during the period commencing November 1, 2018 and ending on the date of the closing of the Proposed Transaction). Upon consummation of the Proposed Transaction, it is expected that existing Penn National shareholders will hold approximately 78% and former Pinnacle stockholders will hold only approximately 22% of the outstanding common stock of Penn National. The special shareholder meeting at which Pinnacle's shareholders will vote on the Proposed Transaction is scheduled to take place on March 29, 2018.

3. On February 28, 2018, defendants filed a Definitive Proxy Statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES AND RELEVANT ENTITIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Pinnacle common stock.

9. Defendant Pinnacle is a Delaware corporation and maintains its headquarters at 3980 Howard Hughes Parkway, Las Vegas, Nevada 89169. Pinnacle's common stock is traded on the NASDAQ under the ticker symbol "PNK."

10. Defendant Anthony M. Sanfilippo ("Sanfilippo") is Chairman of the Board and Chief Executive Officer ("CEO") of Pinnacle.

11. Defendant Carlos Ruisanchez ("Ruisanchez") is a director, and the President and Chief Financial Officer ("CFO") of Pinnacle.

12. Defendant Charles L. Atwood ("Atwood") is a director of Pinnacle.

13. Defendant Stephen Comer ("Comer") is a director of Pinnacle.

14. Defendant Ron Huberman ("Huberman") is a director of Pinnacle.

15. Defendant James L. Martineau ("Martineau") is a director of Pinnacle.

16. Defendant Jaynie Miller Studenmund ("Studenmund") is a director of Pinnacle.

17. Defendant Desirée Rogers ("Rogers") is a director of Pinnacle.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

19. Non-party Penn National is Pennsylvania corporation and a party to the Merger Agreement.

20. Non-party Merger Sub is Delaware corporation, a wholly owned subsidiary of

Penn National, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Pinnacle (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22. This action is properly maintainable as a class action.

23. The Class is so numerous that joinder of all members is impracticable. As of February 23, 2018, there were approximately 58,133,737 shares of Pinnacle common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the

adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

28.     Pinnacle owns and operates 16 gaming, hospitality, and entertainment businesses, of which 15 operate in leased facilities.  The Company's one owned facility is located in Ohio and its leased facilities are located in Colorado, Indiana, Iowa, Louisiana, Mississippi, Missouri, Nevada, and Pennsylvania.

29.     Over the last several years, Pinnacle has grown through strategic acquisitions, including the acquisition of Ameristar Casinos, Inc. in August 2013 and the acquisition of The Meadows Racetrack and Casino in September 2016.  The Company has also grown through the development and opening of three properties: Belterra Park, L'Auberge Baton Rouge, and River City.

30.     Pinnacle has also made strategic dispositions over the last several years, including an April 2016 sale-leaseback of the majority of its real estate assets to Gaming and Leisure Properties, Inc., a real estate investment trust, and a sale of the equity interests in subsidiaries that operated the Lumiére Place Casino, HoteLumiére, and the Four Seasons Hotel St. Louis.

31.     On December 17, 2017, the Individual Defendants caused the Company to enter into the Merger Agreement with Penn National and Merger Sub.

32.     Pursuant to the terms of the Merger Agreement, if Pinnacle's stockholders

5

approve the Proposed Transaction at the March 29, 2018 special stockholder meeting and the Proposed Transaction is completed, Pinnacle's stockholders will receive $20.00 in cash and 0.42 shares of Penn National common stock for each share of Pinnacle common stock owned.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

33. On February 28, 2018, defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

34. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

35. The Proxy Statement omits material information regarding Pinnacle's financial projections, Penn National's financial projections, and the valuation analyses performed by the Board's financial advisor in connection with the Proposed Transaction, J.P. Morgan Securities LLC ("J.P. Morgan").

36. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

37. The Proxy Statement fails to disclose certain material projections that were relied upon by J.P. Morgan in performing its valuation analyses. For example, the Proxy Statement indicates that J.P. Morgan performed a Discounted Cash Flow Analysis of Pinnacle by calculating the estimated present value of the "unlevered free cash flows that Pinnacle is

expected to generate during fiscal years 2017 through 2021, which were based upon financial projections prepared by the management of Pinnacle and upon extrapolations reviewed and approved by the management of Pinnacle for the fiscal years 2022 through 2026 under both existing tax rates and as adjusted for a reduction in Federal tax rates to 21% under then-proposed legislation."

38. Although the Proxy Statement discloses the Company's projected unlevered free cash flows for years 2017 through 2026 at the then-existing tax rate, the Proxy Statement fails to disclose Pinnacle's unlevered free cash flows for years 2018 through 2025 at the then-proposed 21% tax rate.

39. Further, the Proxy Statement discloses certain projections of each of Pinnacle and Penn National for non-GAAP (generally accepted accounting principles) metrics that were used by J.P. Morgan and Penn National's banker, Goldman Sachs & Co. LLC ("Goldman Sachs"), to perform their respective valuation analyses in connection with the Proposed Transaction. Specifically, with respect to the projections provided by Pinnacle, the Proxy Statement discloses non-GAAP projections of EBITAR, EBITDA, Unlevered Free Cash Flow, Recurring EBITDAR, Recurring Free Cash Flow, and Free Cash Flow. With respect to the projections provided by Penn National, the Proxy Statement discloses non-GAAP projections of EBITAR, Adjusted EBITDA, and Unlevered Free Cash Flow. The Proxy Statement, however, fails to provide stockholders with the necessary line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures.

40. To avoid misleading stockholders with non-GAAP financial measures in business combinations such as the Proposed Transaction, publicly traded companies must provide a

reconciliation of the differences between the non-GAAP financial measures with the most comparable financial measures calculated and presented in accordance with GAAP. Indeed, defendants acknowledge in the Proxy Statement that EBITDAR and EBITDA "should not be considered as an alternative to operating income or net income as a measure of operating performance or as an alternative to any other measure provided in accordance with GAAP," and that "[n]on-GAAP financial measures should not be considered in isolation from, or as a substitute for, financial information presented in compliance with GAAP, and non-GAAP financial measures as used by Penn and Pinnacle may not be comparable to similarly titled amounts used by other companies." As such, stockholders are entitled to the line item projections used to calculate Pinnacle's and Penn National's non-GAAP projections or a reconciliation of the non-GAAP projections to the most comparable GAAP measures.

41. With respect to J.P. Morgan's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) Pinnacle's unlevered free cash flows for years 2018 through 2025 at the then-proposed 21% tax rate, as well as the line item projections of the Company's projected unlevered free cash flows for years 2017 through 2026; (ii) whether J.P. Morgan's analysis took into account the substantial synergies that are expected to result from the Proposed Transaction; (iii) the specific inputs and assumptions underlying the different sets of discount rates calculated by J.P. Morgan and applied to the unlevered free cash flows and terminal values of Pinnacle; and (iv) the terminal exit multiples implied by J.P. Morgan's analysis.

42. With respect to J.P. Morgan's Public Trading Multiples, the Proxy Statement fails to disclose: (i) the equity research analyst estimates for Pinnacle's and Penn National's 2018 EBITDA; (ii) the trading multiples of Pinnacle and Penn National as used by J.P. Morgan in its analysis; and (iii) the trading multiples of the regional gaming companies, global gaming

companies, and gaming REITs observed by J.P. Morgan in its analysis.

43. With respect to J.P. Morgan's Analyst Price Targets Analysis, the Proxy Statement fails to disclose the individual stock price targets of Pinnacle observed by J.P. Morgan in its analysis.

44. With respect to J.P. Morgan's Selected Transaction Analysis, the Proxy Statement fails to disclose the individual multiples and financial benchmarking metrics for each of the transactions observed by J.P. Morgan in its analysis.

45. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Certain Penn Unaudited Prospective Financial Information; (ii) Certain Pinnacle Unaudited Prospective Financial Information; and (iii) Opinion of Pinnacle's Financial Advisor.

46. The Proxy Statement omits material information regarding potential conflicts of interest of the Company's executive officers. Specifically, the Proxy Statement fails to disclose whether any representatives of Penn National or its affiliates have made any overtures to, or had any conversations with, any of Pinnacle's executive officers or directors regarding post-merger employing or directorships during the negotiations leading to the execution of the Merger Agreement. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

47. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; and (ii) Interests of Certain Pinnacle Directors and Executive Officers in the

Merger.

48. The Proxy Statement omits material information relating to the background leading to the Proposed Transaction. Pinnacle's stockholders are entitled to an accurate description of the process the directors used in coming to their decision to support the Proposed Transaction.

49. Specifically, the Proxy Statement indicates that the Board considered other potential strategic alternatives other than the Proposed Transaction with Penn National, including a "strategic buy-side opportunity," but it fails to disclose the nature of those strategic alternatives and whether the Board engaged in discussions with other third parties regarding those potential alternatives.

50. The omission of this material information renders the Background of the Merger section of the Proxy Statement false and misleading.

51. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Pinnacle's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Pinnacle**

52. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

53. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Pinnacle is liable as the issuer of these statements.

54. The Proxy Statement was prepared, reviewed, and/or disseminated by the

Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

55. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

56. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

57. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

58. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

59. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

60. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

61. The Individual Defendants acted as controlling persons of Pinnacle within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Pinnacle and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement,

they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

62.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

63.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

64.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

65.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: March 7, 2018            **KEMP, JONES & COULTHARD LLP**

By: */s/ Michael J. Gayan*
Michael J. Gayan (NV Bar No. 11135)
Wells Fargo Tower, 17th Floor
3800 Howard Hughes Parkway
Las Vegas, NV 89169
(702) 385-6000

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
Brian D. Long
Gina M. Serra
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
(302) 295-5310

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
(484) 324-6800

## CERTIFICATION OF PLAINTIFF

I, Adam Franchi ("Plaintiff"), hereby declare as to the claims asserted under the federal securities laws that:

1. Plaintiff has reviewed the complaint and authorizes its filing.

2. Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3. Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, and I will testify at deposition or trial, if necessary. I understand that this is not a claim form and that I do not need to execute this Certification to share in any recovery as a member of the class.

4. Plaintiff's purchase and sale transactions in the Pinnacle Entertainment, Inc. (Nasdaq: PNK) security that is the subject of this action during the class period is/are as follows:

PURCHASES

| Buy Date | Shares | Price per Share |
|---|---|---|
| 12/1/17 | 5 | $30.87 |
|  |  |  |
|  |  |  |
|  |  |  |

SALES

| Sell Date | Shares | Price per Share |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

*Please list additional transactions on separate sheet of paper, if necessary.*

5. Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including Plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6. During the three years prior to the date of this Certification, Plaintiff has not moved to serve as a representative party for a class in an action filed under the federal securities laws.

7. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 6th day of March, 2018.

_____
Adam Franchi

2